# Exhibit 7 –
# Declaration of Stacie Rumenap (Stop Child Predators)

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION, and <br><br>NETCHOICE, LLC, <br><br>    *Plaintiffs*, <br><br>v. <br><br>KEN PAXTON, in his official capacity as Attorney General of Texas, <br><br>    *Defendant*. | Civil Action No. 1:24-cv-849 |

**DECLARATION OF STOP CHILD PREDATORS IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION**

I, Stacie D. Rumenap, declare:

    1.    ***Identity of Declarant***.  I am the President of Stop Child Predators (SCP), a 501(c)(3) nonprofit organization founded in 2005 to combat the sexual exploitation of children and protect the rights of crime victims nationwide.  I have led SCP since 2006, having worked in all 50 states—including spearheading the passage of Jessica's Law in 46 states.  SCP brings together policy experts, law enforcement officers, community leaders, and parents to launch state and federal campaigns to inform lawmakers and the public about policy changes that will protect America's children from sexual predators both online and in the real world.  I make this declaration from personal knowledge.

    2.    ***SCP's Mission***.  SCP works with parents, lawmakers, and policy experts to better educate families, schools, and lawmakers about the potential risks children face both in the real world and online, including grooming, luring, bullying, child pornography, and other harms to children.  SCP has worked for nearly two decades to open lines of dialogue with lawmakers and technology company stakeholders, to help them determine the best and most practical ways to

protect children from these risks.

      3.    SCP focuses significant policy efforts on keeping social media, and the internet more broadly, safe for children. In 2008, we launched the Stop Internet Predators (SIP) initiative in recognition that child predators often use social-networking platforms to recruit child sex-trafficking victims, to groom children for sexual exploitation, and to sexually victimize children in general, and sex offender management, and that child safety must therefore be addressed both in the real world and online. Our more recent Digital Safety Project adapts the SIP initiative's goals to a new online landscape, and operates from the premise that the private sector plays an important role in protecting children. Through this project, we also work to ensure that the government doesn't unnecessarily interfere with the protection of children or the ability of parents to decide what's best for their children.

      4.    We believe that the internet and social media have incalculable value for our young people—particularly those who are disabled, suffer from anxiety, or are in other circumstances that make it difficult for them to connect in person. We therefore work with leading online platforms, including Plaintiff's members, to develop and enforce policies that prioritize children's safety while still promoting free speech and ensuring children have access to valuable technology. Our goal is to help businesses develop tools and mechanisms to identify and promptly take down illegal content (Child Sexual Abuse Material, or CSAM), and to help them identify products and services that may be used by predators to target and lure children. These tools and mechanisms help businesses mitigate the potential for their products and services to be used to cause harm.

      5.    We believe the private sector plays a critical role in limiting the proliferation of harmful content online. For example, CSAM is prolific on the Internet. In 2018 alone, leading social media platforms reported over 45 million photos and videos of children being sexually abused. In fact, there are so many reports of child exploitation that FBI and Department of Justice officials said that investigating them would require assigning cases to every FBI agent. The

government does not presently have the resources to do that.[1] The government's limited resources underscore the importance of private moderation and filtering technologies. In order to detect CSAM, as well as to report it to authorities, online companies can (and must) develop and use advanced algorithms and other screening tools.

6. *HB18*. We are concerned that HB18, while ostensibly intended to make the internet safer for children, will instead result in serious negative outcomes for children. HB18 requires that minors under the age of 18 be registered by a "verified parent," or a "means the parent or guardian of a known minor whose identity and relationship to the minor have been verified by a digital service provider." This would require businesses to collect personal information from each of their minor users and their parents, creating a trove of sensitive data regarding these children. We consider it not a risk but an inevitability, given the realities of data security, that one or more of these data sets will be breached, exposing the personal information of children to bad actors.

7. In my work to make the internet safer for children, I have become familiar with the types of technology that companies have considered to verify the ages of their users. I understand that this technology raises accessibility concerns. For instance, a technology that requires a user to take a photograph of their own face would not be accessible to a person who does not have an integrated camera on their device, and may prove practically inaccessible to someone who is vision impaired and cannot easily take a photograph. While we believe the government should be involved in keeping the internet safe for children, we are opposed to a solution that would render portions of the internet inaccessible to disabled and under-resourced individuals.

---

[1] Katie Benner & Mike Isaac, *Child-Welfare Activists Attack Facebook Over Encryption Plans,* N.Y. Times (Feb. 5, 2020), https://nyti.ms/38rN3IX.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

Executed on this July 26, 2024 in Washington, DC.

_____
Stacie D. Rumenap