**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION, and | ) ) ) | |
| NETCHOICE, LLC, | ) ) | |
| *Plaintiffs*, | ) ) | |
| | ) | Civil Action No. 1:24-cv-00849-RP |
| v. | ) ) | |
| KEN PAXTON, in his official capacity as Attorney General of Texas, | ) ) ) | |
| *Defendant*. | ) ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION
AND, IN THE ALTERNATIVE, TEMPORARY RESTRAINING ORDER**

# TABLE OF CONTENTS

Table of Authorities ........................................................................................................ ii

Introduction .................................................................................................................... 1

Argument ........................................................................................................................ 2

I.   Plaintiffs are likely to succeed on the merits. .......................................................... 2

   A.   Sovereign immunity does not bar this suit. ........................................................ 2

   B.   Plaintiffs have standing. ...................................................................................... 3

   C.   HB18's central coverage definition is content-based, speaker-based, and vague, which renders unconstitutional all of the challenged HB18 speech regulations. .......................... 6

   D.   HB18's monitoring-and-censorship requirements are independently unlawful. .............. 11

      1.   The monitoring-and-censorship requirements are unconstitutional. ........................ 11

      2.   The monitoring-and-censorship requirements are preempted by 47 U.S.C. § 230..... 18

II.  The remaining factors favor a preliminary injunction. .......................................... 20

Conclusion ..................................................................................................................... 20

Certificate of Service ..................................................................................................... 21

## Table of Authorities

**Page(s)**

**Cases**

*Ams. for Prosperity Found. v. Bonta,*
   594 U.S. 595 (2021).............................................................................................8, 9, 10

*Arizona Free Enter. Club's Freedom Club PAC v. Bennett,*
   564 U.S. 721 (2011).......................................................................................................15

*Ashcroft v. ACLU,*
   542 U.S. 656 (2004).........................................................................................................9

*Bantam Books, Inc. v. Sullivan,*
   372 U.S. 58 (1963)...............................................................................................1, 15, 17

*Barnes v. Yahoo!, Inc.,*
   570 F.3d 1096 (9th Cir. 2009) ...............................................................................19, 20

*Barr v. Am. Ass'n of Pol. Consultants, Inc.,*
   591 U.S. 610 (2020).................................................................................................1, 6, 7

*Bartnicki v. Vopper,*
   532 U.S. 514 (2001).......................................................................................................15

*Book People, Inc. v. Wong,*
   91 F.4th 318 (5th Cir. 2024) ................................................................................ *passim*

*Boos v. Barry,*
   485 U.S. 312 (1988).......................................................................................................11

*Braidwood Mgmt., Inc. v. EEOC,*
   70 F.4th 914 (5th Cir. 2023) .........................................................................................4

*Brandenburg v. Ohio,*
   395 U.S. 444 (1969).......................................................................................................14

*Brown v. City of Houston,*
   660 S.W.3d 749 (Tex. 2023)..........................................................................................13

*Brown v. Ent. Merchs. Ass'n,*
   564 U.S. 786 (2011).....................................................................................................8, 9

*City of Austin v. Reagan Nat'l Advert. of Austin, LLC,*
   596 U.S. 61 (2022)...........................................................................................................7

*City of Houston, Tex. v. Hill*,
    482 U.S. 451 (1987) ............................................................................................12

*Counterman v. Colorado*,
    600 U.S. 66 (2023) .............................................................................................14

*Doe I v. Landry*,
    909 F.3d 99 (5th Cir. 2018) ..............................................................................10

*Doe v. Mckesson*,
    71 F.4th 278 (5th Cir. 2023) ...............................................................................6

*Doe v. MySpace, Inc.*,
    528 F.3d 413 (5th Cir. 2008) ......................................................................19, 20

*Express Oil Change, L.L.C. v. Miss. Bd. of Licensure for Pro. Eng'rs &
    Surveyors*,
    916 F.3d 483 (5th Cir. 2019) ............................................................................14

*Expressions Hair Design v. Schneiderman*,
    581 U.S. 37 (2017) ............................................................................................10

*FEC v. Cruz*,
    596 U.S. 289 (2022) ..........................................................................................15

*Free Speech Coalition, Inc. v. Paxton*,
    95 F.4th 263 (5th Cir. 2024) .............................................................................20

*Gibson v. Tex. Dep't*,
    700 F.3d 227 (5th Cir. 2012) ............................................................................17

*Interstate Cir., Inc. v. City of Dallas*,
    390 U.S. 676 (1968) ..........................................................................................11

*Lemmon v. Snap, Inc.*,
    995 F.3d 1085 (9th Cir. 2021) ..........................................................................20

*Minneapolis Star & Tribune Co. v. Minnesota Comm'r of Revenue*,
    460 U.S. 575 (1983) ......................................................................................8, 10

*Moody v. NetChoice, LLC*,
    144 S. Ct. 2383 (2024) ............................................................................ *passim*

*Nat'l Press Photographers Ass'n v. McCraw*,
    90 F.4th 770 (5th Cir. 2024) ...........................................................................3, 5

*Nat'l Rifle Ass'n of Am. v. Vullo*,
    602 U.S. 175 (2024) ..........................................................................................17

*NetChoice, L.L.C. v. Paxton*,
   49 F.4th 439 (5th Cir. 2022) ..........................................................................6

*NetChoice, LLC v. Bonta*,
   2024 WL 3838423 (9th Cir. Aug. 16, 2024)..........................................9, 11, 14, 16

*NetChoice, LLC v. Fitch*,
   2024 WL 3276409 (S.D. Miss. July 1, 2024) ..........................................5, 7, 8, 11

*NetChoice, LLC v. Griffin*,
   2023 WL 5660155 (W.D. Ark. Aug. 31, 2023)..........................................5, 7, 11

*NetChoice, LLC v. Yost*,
   2024 WL 555904 (S.D. Ohio Feb. 12, 2024)..........................................5, 7, 8

*OCA-Greater Houston v. Texas*,
   867 F.3d 604 (5th Cir. 2017) ..........................................................................5

*Ostrewich v. Tatum*,
   72 F.4th 94 (5th Cir. 2023) ..........................................................................3

*Pulse Network, LLC v. Visa, Inc.*,
   30 F.4th 480 (5th Cir. 2022) ..........................................................................4

*Reed v. Town of Gilbert*,
   576 U.S. 155 (2015)..........................................................................................7

*Roark & Hardee LP v. City of Austin*,
   522 F.3d 533 (5th Cir. 2008) ........................................................................10

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
   592 U.S. 14 (2020)..........................................................................................20

*SEIU, Local 5 v. City of Houston*,
   595 F.3d 588 (5th Cir. 2010) ...............................................................10, 11

*Serafine v. Branaman*,
   810 F.3d 354 (5th Cir. 2016) ........................................................................12

*Speech First, Inc. v. Fenves*,
   979 F.3d 319 (5th Cir. 2020) ..........................................................................3

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014)..........................................................................................4

*Tex. Democratic Party v. Abbott*,
   961 F.3d 389 (5th Cir. 2020) .....................................................................1, 2

iv

*Time Warner Cable Inc. v. Hudson*,
   667 F.3d 630 (5th Cir. 2012) ...................................................................4

*Turner Broad. Sys., Inc. v. FCC*,
   512 U.S. 622 (1994)...............................................................................8

*United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*,
   517 U.S. 544 (1996)...............................................................................5

*United States v. Comer*,
   5 F.4th 535 (4th Cir. 2021) .................................................................11

*United States v. Hansen*,
   599 U.S. 762 (2023).............................................................................15

*United States v. Playboy Ent. Grp.*,
   529 U.S. 803 (2000)......................................................................9, 11, 16

*United States v. Williams*,
   553 U.S. 285 (2008).............................................................................15

*Virginia v. Am. Booksellers Ass'n, Inc.*,
   484 U.S. 383 (1988).............................................................................5

*Waffle House, Inc. v. Williams*,
   313 S.W.3d 796 (Tex. 2010).................................................................13

*Whole Woman's Health v. Jackson*,
   595 U.S. 30 (2021)...............................................................................2

*Young v. Am. Mini Theatres, Inc.*,
   427 U.S. 50 (1976)...............................................................................10

**Statutes**

47 U.S.C. § 230.................................................................................1, 18, 19, 20

Tes. Bus. & Com. Code § 509.151 ..............................................................3

Tex. Bus. & Com. Code § 17.47 ...............................................................13

Tex. Bus. & Com. Code § 120.151 ..............................................................2

Tex. Bus. & Com. Code § 509.001 ..............................................................6

Tex. Bus. & Com. Code § 509.002 ..................................................... *passim*

Tex. Bus. & Com. Code § 509.053 ..................................................... *passim*

Tex. Civ. Prac. & Rem. Code § 143A.008 ............................................................. 2

Tex. Gov. Code § 311.024 ..................................................................................... 13

**Other Authorities**

Am. Academy of Child & Adolescent Psychiatry, Social Media and Teens (Mar. 2018), https://perma.cc/J4G9-M8DP ............................................................... 9

The Police, *Every Breath You Take* (1983) ........................................................... 13

Restatement (Second) of Torts § 558 (1977) ........................................................ 19

Social Media and Youth Mental Health: The U.S. Surgeon General's Advisory, U.S. Dep't of Health and Human Serv. (2023), https://perma.cc/SXB9-HVGQ ................. 8, 9

Claire Cain Miller, *Everyone Says Social Media Is Bad for Teens. Proving It Is Another Thing*, The New York Times (June 17, 2023), https://perma.cc/J4G9-M8DP ................................................................................................................. 9

## Introduction

There is no dispute that Texas House Bill 18 (2023) ("Act" or "HB18") regulates speech. Defendant concedes that HB18's monitoring-and-censorship requirements "forbid" speech (Resp. 21) and "require providers . . . to block harmful content" (Resp. 28-29). That violates age-old First Amendment principles the Supreme Court recently reaffirmed in *Moody v. NetChoice, LLC*, 144 S. Ct. 2383 (2024). He also concedes that HB18's other speech regulations discriminate among speech by "exempt[ing] news, sports, and commerce sites." Resp. 13-14. If Plaintiffs' members changed their websites to allow only (state-favored) speech about "news, sports, and commerce" (Resp. 13-14), they would not be covered by HB18. "That is about as content-based as it gets." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 619 (2020) (controlling plurality op.). Thus, all of the Act's challenged regulations trigger—and fail—strict scrutiny.

Anticipating the constitutional problems with applying HB18's censorship regime to protected speech, Defendant resorts to rewriting the statutory text through a "limiting construction." Resp. 20-30. But it is not clear what precise definition(s) Defendant proposes. Regardless, even if HB18 were susceptible to Defendant's editing, HB18 would still "superimpose[]" unconstitutional speech restrictions "upon the State's criminal regulation[s]" that already address the unlawful conduct contemplated by HB18. *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 69 (1963). So HB18's restrictions are unconstitutional under controlling precedent that Defendant never disputes (or even cites). They are similarly preempted under 47 U.S.C. § 230, because they impermissibly regulate the ways in which websites *must* moderate potentially harmful content.

Defendant's other arguments fail. First, sovereign immunity poses no bar, as HB18 grants the Attorney General enforcement authority. Defendant therefore has "some connection with the enforcement of" HB18, *Book People, Inc. v. Wong*, 91 F.4th 318, 334 (5th Cir. 2024) (citation omitted); and he "can act" to enforce it, *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 401 (5th

Cir. 2020) (citation omitted). Second, Plaintiffs have associational standing. Defendant concedes that HB18 "forbid[s]" Plaintiffs' members from disseminating certain speech (Resp. 21) and saddles them with "cost[s] of compliance" (Resp. 17). Those are quintessential Article III injuries.

**Argument**

I.     **Plaintiffs are likely to succeed on the merits.**

     **A.  Sovereign immunity does not bar this suit.**

Suits for injunctive relief against state officials "fall within the scope of *Ex parte Young*'s historic exception to state sovereign immunity" where the defendant is an "official who *may* . . . take enforcement actions against [plaintiffs] if they violate" state law. *Whole Woman's Health v. Jackson*, 595 U.S. 30, 45-46 (2021) (emphasis added) (controlling plurality op.).

Defendant concedes that the Attorney General has "enforcement authority" over HB18. Resp. 8. If an "official *can* act," and if "there's a significant *possibility* that he or she *will*," then "the official has engaged in enough compulsion or constraint to apply the *Young* exception." *Tex. Democratic Party*, 961 F.3d at 401 (citation omitted). In other words, the "state official[] must have 'some connection with the enforcement of the'" challenged act. *Book People*, 91 F.4th at 334 (citation omitted). Defendant cites no authority holding that the Texas Attorney General has sovereign immunity where he has exclusive enforcement authority. Indeed, the enforcement authority Defendant has here is very similar to the authority he has to enforce Texas's other regulation of online speech: Texas House Bill 20 (2021).[1] Defendant offers three unavailing responses.

First, Defendant argues that an official's enforcement authority must be "mandatory." Resp. 8. Although a mandatory duty is *sufficient*, it is not *necessary*. It is enough that Defendant "can" enforce HB18, *Tex. Democratic Party*, 961 F.3d at 401 (citation omitted); is "responsible

---

[1] *See* Tex. Bus. & Com. Code § 120.151; Tex. Civ. Prac. & Rem. Code § 143A.008.

for enforcing" HB18, *Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 786 (5th Cir. 2024); or has "the ability" to enforce HB18, *Ostrewich v. Tatum*, 72 F.4th 94, 101 (5th Cir. 2023).

Second, Defendant says that the Attorney General has not "demonstrated a willingness" to enforce HB18. Resp. 8 (citation omitted). But "when dealing with pre-enforcement challenges to recently enacted . . . statutes that facially restrict expressive activity . . . , courts *will assume a credible threat of prosecution* in the absence of *compelling contrary evidence*." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 335 (5th Cir. 2020) (emphases added; citation omitted). Defendant concedes that Plaintiffs' members' "speech is clearly proscribed" by HB18. Resp. 2. A "credible threat of prosecution" is thus "assume[d]" for standing purposes, *Speech First*, 979 F.3d at 335, which "'tends toward a finding' that a plaintiff may sue the official," *Book People*, 91 F.4th at 335 (citation omitted). Notably, Defendant has not disavowed enforcement against Plaintiffs' members.

Third, Defendant says he is immune as an "apex" official, relying on precedent with a different enforcement scheme. Resp. 9. There is no such exception. Defendant does not deny his control over the "consumer protection division of" his own office. § 509.151. Rather, he "is responsible for" and "enforces the law through" the division. *Book People*, 91 F.4th at 335-36. Because "this court can enjoin" those actions, *id.* at 335, Defendant is not immune.

### B. Plaintiffs have standing.

**1.** Plaintiffs have associational standing because "(a) [their] members would otherwise have standing to sue in their own right; (b) the interests [they] seek[] to protect are germane to [their] purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members." *McCraw*, 90 F.4th at 781. Defendant does not dispute the second prong.

First, in Defendant's own words, Plaintiffs have members "whose speech is clearly proscribed" by HB18. Resp. 18. He thus concedes injury-in-fact (*contra* Resp. 9), because "[w]hen the government targets certain speakers . . . 'no further showing of suffering . . . is required for

purposes of standing.'" *Time Warner Cable Inc. v. Hudson*, 667 F.3d 630, 636 (5th Cir. 2012) (citation omitted). "[A] plaintiff satisfies the injury-in-fact requirement where he alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (citation omitted). Plaintiffs allege that the Act's core coverage definition is unconstitutional. Compl. ¶ 77. The Act's provisions challenged here that turn on that definition are therefore unconstitutional as well, giving Plaintiffs standing to challenge each of those provisions. *See* Mot. 6-7. Separately, HB18's requirements are "extremely costly" for Plaintiffs' members. Compl. ¶ 35; *see* Resp. 17. "[A]llegations of economic injury establish injury in fact." *Pulse Network, LLC v. Visa, Inc.*, 30 F.4th 480, 489 n.9 (5th Cir. 2022).

Plaintiffs' injuries are also ripe. *Contra* Resp. 10-11. For both facial and as-applied claims, courts evaluate ripeness using a two-part test: "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Book People*, 91 F.4th at 333; *see Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914, 926, 930-32 (5th Cir. 2023) (applying ordinary ripeness test to an "as-applied . . . challenge"). Defendant does not contest that Plaintiffs' challenge presents purely legal issues or that withholding consideration would create substantial hardships for Plaintiffs' members. Instead, Defendant argues that Plaintiffs' *as-applied* claims are not ripe and pose a few questions he contends require answers. Resp. 10-11. But Defendant fails to explain how those answers "would be helpful to the court." *Braidwood*, 70 F.4th at 931. Such "talismanic" resort to "further factual development" cannot conquer ripeness where, as here, standing is conceded and injury is imminent. *See id.* At bottom, Plaintiffs' covered members "did not need to break the law and thereby expose [themselves] to liability." *Id.* at 926 (citation omitted).

Second, neither Plaintiffs' claims "nor the relief requested requires the participation of

4

individual members." *McCraw*, 90 F.4th at 781. Plaintiffs seek only declaratory and prospective injunctive relief, and "'individual participation' is not normally necessary when an association seeks prospective or injunctive relief for its members." *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 546 (1996) (citation omitted).

Defendant argues otherwise, citing *Moody*. Resp. 9. But nothing in *Moody* overruled Supreme Court precedent on associational standing or foreclosed an organization from "assess[ing] the state laws' scope" itself. 144 S. Ct. at 2398. The Supreme Court never suggested that such "analysis" requires an association's members to participate as parties. *Id.* The Court remanded the cases for "*NetChoice* to carry *its* burden" to demonstrate the laws are facially invalid. *Id.* at 2409 (emphases added). Nor did *Moody* foreclose trade associations from bringing as-applied claims for declaratory and injunctive relief. *Contra* Resp. 10. Defendant's reliance on *Moody* improperly "conflates the merits of the suit with the plaintiff[s'] standing to bring it." *OCA-Greater Houston v. Texas*, 867 F.3d 604, 613 (5th Cir. 2017).

**2.** Plaintiffs also have standing to protect their members' users' (in addition to their own) First Amendment rights. "[I]n the First Amendment context, litigants are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392 (1988) (cleaned up). Multiple courts have considered and rejected the arguments Defendant makes here. *NetChoice, LLC v. Fitch*, 2024 WL 3276409, at *7 (S.D. Miss. July 1, 2024); *NetChoice, LLC v. Yost*, 2024 WL 555904, at *5-6 (S.D. Ohio Feb. 12, 2024); *NetChoice, LLC v. Griffin*, 2023 WL 5660155, at *10-11 (W.D. Ark. Aug. 31, 2023).

Defendant asserts that Plaintiffs "improperly mix[] third-party standing and overbreadth"

and "Plaintiffs did not assert an overbreadth claim." Resp. 11. But both Plaintiffs' Complaint and Motion asserted an overbreadth claim. *E.g.*, Compl. ¶¶ 106, 114; Mot. 6, 13. Defendant never responds to these arguments.

### C. HB18's central coverage definition is content-based, speaker-based, and vague, which renders unconstitutional all of the challenged HB18 speech regulations.

**1.** The HB18 speech regulations challenged in this lawsuit apply to particular "digital service provider[s]," § 509.001, subject to § 509.002's content-based and speaker-based parameters and exceptions. Mot. 7. Because all the challenged HB18 speech restrictions rely on this definition, they are all unconstitutional.

Section 509.002's coverage exceptions are plainly content-based. If Plaintiffs' members tomorrow changed their websites to allow only speech about "news, sports, [and] commerce," those websites would no longer be covered by HB18. § 509.002(10)(A). "That is about as content-based as it gets." *Barr*, 591 U.S. at 619 (controlling plurality op.).

Defendant argues that Fifth Circuit precedent forecloses this argument. Resp. 13-14 (citing *NetChoice, L.L.C. v. Paxton*, 49 F.4th 439, 480 (5th Cir. 2022)). The Supreme Court *vacated* that judgment, "void[ing] each of the judgment's holdings." *Doe v. Mckesson*, 71 F.4th 278, 286 (5th Cir. 2023). The Court neither "rebuffed" the argument here nor "confirmed . . . the Fifth Circuit's analysis of HB 20's 'news, sports, and entertainment' exception." Resp. 14. *Moody* actually held "the Fifth Circuit got its likelihood-of-success finding wrong." 144 S. Ct. at 2403.

Further, Defendant incorrectly asserts that the Supreme Court rejected the proposition that a content-based coverage definition renders all of a law's speech regulations content-based. *Contra* Resp. 14. But *Moody* did not decide "whether to apply strict or intermediate scrutiny." 144 S. Ct. at 2407. Because "Texas's law d[id] not pass" even "the less stringent form of First Amendment review," the Court had no reason to analyze whether the law was content-based. *Id.* So the Court

6

did not displace the longstanding rule that "[c]ontent-based laws . . . are presumptively unconstitutional." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).

Defendant responds that, "[e]ven if Plaintiffs were right," then the Court should just sever "HB 18's 'news, sports, and commerce' exemption." Resp. 34. That would make the First Amendment violations worse, not better. Severance would *extend* the Act's speech restrictions, rather than lessen them, as in cases like *Barr*. There, the Supreme Court considered a law that prohibited robocalls with a content-based exemption for collecting debts owed to the federal government. 591 U.S. at 619. Severing the exemption there eliminated the law's constitutional deficiencies, as the First Amendment does not prohibit government from banning robocalls altogether. *Id.* at 633.

Aside from the "news, sports, [and] commerce" exception, HB18 is content-based because it targets websites based on whether they allow users to interact "socially." § 509.002(a)(1); *contra* Resp. 15. *Fitch* held that coverage based on "social interaction" is necessarily "based upon the nature of the material that is disseminated." 2024 WL 3276409, at *9. *Yost* and *Griffin* did too. *Yost*, 2024 WL 555904, at *11; *Griffin*, 2023 WL 5660155, at *16. Defendant says those courts were wrong because "[t]he term 'social,' by itself, is indifferent to any *specific* topic or message." Resp. 15 (emphasis added). Yet the Texas Legislature intended to exclude non-"social" interactions (*e.g.*, professional interactions)—and the kinds of topics and content they entail. *E.g.*, *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 71 (2022) ("ideological messages" are content-based). Governments cannot use a "function or purpose" of speech as a stand-in for content. *Reed*, 576 U.S. at 163. HB18 does that, triggering strict scrutiny. *See* Mot. 7.

Defendant also ignores that speaker-based "laws that single out the press, or certain elements thereof, . . . are always subject to at least some degree of heightened First Amendment scrutiny." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 640-41 (1994) (cleaned up). That is

especially true where a regulation targets "a small group of" speakers, as HB18 does (especially relative to the many websites online). *Minneapolis Star & Tribune Co. v. Minnesota Comm'r of Revenue*, 460 U.S. 575, 591 (1983). For all these reasons, the HB18 speech regulations challenged here trigger strict scrutiny by relying on HB18's central coverage definition at § 509.002.

**2.** Defendant makes no attempt to prove that HB18 is "the least restrictive means of achieving a compelling state interest," satisfying strict scrutiny. *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 607 (2021) ("*AFP*") (citation omitted). Instead, Defendant goes "provision-by-provision," not responding to HB18's tailoring flaws. Resp. 15-18. Consequently, Plaintiffs' challenge succeeds if the Court agrees that HB18's coverage definition is content-based or speaker-based. *See* Mot. 8-9; *see Fitch*, 2024 WL 3276409, at *9 ("content-based distinction is inherent in the definition of 'digital service provider'"); *Yost*, 2024 WL 555904, at *11.

The challenged HB18 speech regulations fail strict scrutiny in any event. As for the State's interest, Defendant's argument is grounded in a variety of academic articles and news sources about the purported harms of social media. Resp. 1-6. But Defendant never establishes "proof" of a "direct causal link," *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 799 (2011), between social media websites and any "significant harm to users," Resp. 4.

For one thing, the cited evidence discusses *positive* features of social media. That is unsurprising given the valuable speech available on covered websites. As just one example, the Surgeon General's Advisory (cited at Resp. 5 n.28) highlights the potential "benefits of social media use among children and adolescents," including (1) "positive community and connection with others who share identities, abilities and interests"; (2) "access to important information"; (3) "a space for self-expression"; and (4) the opportunity to "form and maintain friendships online and develop social connections." Social Media and Youth Mental Health: The U.S. Surgeon General's

Advisory, U.S. Dep't of Health and Human Serv. 6 (2023), https://perma.cc/SXB9-HVGQ.[2]

That same Advisory notes that "robust independent safety analyses on the impact of social media on youth have not yet been conducted," "[m]ore research is needed to fully understand the impact of social media," and "[m]ost prior research to date has been correlational." *Id.* at 4, 11. "Reviews of the existing studies on social media use and adolescents' mental health have found the bulk of them to be 'weak,' 'inconsistent,' 'inconclusive,' 'a bag of mixed findings' and 'weighed down by a lack of quality' and 'conflicting evidence.'" Claire Cain Miller, *Everyone Says Social Media Is Bad for Teens. Proving It Is Another Thing*, The New York Times (June 17, 2023), https://perma.cc/J4G9-M8DP. This kind of conflicting evidence does not satisfy heightened First Amendment scrutiny of restrictions on protected speech. *Brown*, 564 U.S. at 799.

Defendant has also failed to show that HB18's speech regulations are "the least restrictive means" of advancing the State's interest. *AFP*, 594 U.S. at 607. For example, Defendant ignores the many tools (identified by Plaintiffs) that parents can use to govern how their children use the Internet and the ways in which covered websites themselves safeguard users. Mot. 3-4. The Supreme Court and other lower courts have repeatedly endorsed such tools as preferable to regulation. *See, e.g.*, *Brown*, 564 U.S. at 803; *Ashcroft v. ACLU*, 542 U.S. 656, 666-67 (2004); *United States v. Playboy Ent. Grp.*, 529 U.S. 803, 826 (2000); *NetChoice, LLC v. Bonta*, 2024 WL 3838423, at *13 (9th Cir. Aug. 16, 2024); Mot. 15. Both Plaintiffs and Defendant have identified the many laws Texas has to address the conduct related to HB18's monitoring-and-censorship requirements. Mot. 16 (citing Compl. ¶¶ 127-28); Resp. 24, 26 & nn.157-158.

Defendant pretends that these alternative means simply do not exist, arguing that HB18 is

---

[2] *See also* Am. Academy of Child & Adolescent Psychiatry, Social Media and Teens (Mar. 2018), https://perma.cc/J4G9-M8DP (detailing benefits of social media).

*necessary* to "give parents authority to supervise their kids' social media usage" and to "empower parents to protect their children." Resp. 1, 17. But that authority and power were already present. Having ignored means already available to parents, Defendant cannot show that HB18 is the "least restrictive" means of enforcing parents' authority. *AFP*, 594 U.S. at 607. Therefore, HB18's coverage provision fails strict scrutiny. Mot. 9.

To rescue HB18, Defendant attempts "a provision-by-provision" analysis of the Act's restrictions. Resp. 15-18. But this cannot save the statute. Even if some of these regulations could pass constitutional muster if they did not apply in a content-based manner, they are still unconstitutional here because they operate only against (1) an unconstitutionally defined; and (2) a relatively "small group" of websites. *Minneapolis Star*, 460 U.S. at 591; *see id.* at 586 (holding that "a tax that singles out the press" was unconstitutional, even though it would have been lawful if levied only as "a generally applicable tax"). Defendant never justifies why the selective, content-based coverage of the regulations satisfies strict scrutiny.

**3.** HB18 § 509.002's coverage provisions are also vague. Defendant argues (Resp. 18) that Plaintiffs cannot assert a vagueness claim, citing *Expressions Hair Design v. Schneiderman*, 581 U.S. 37, 48 (2017). But that case involved "an as-applied challenge *only*." *Id.* at 44 (emphasis added). By contrast, a facial vagueness challenge is proper when a "law has a capacity 'to chill constitutionally protected conduct, especially conduct protected by the First Amendment.'" *SEIU, Local 5 v. City of Houston*, 595 F.3d 588, 597 (5th Cir. 2010) (quoting *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 546 (5th Cir. 2008)). Plaintiffs raise a facial vagueness challenge here.[3]

---

[3] The other cases Defendant cites for this point are inapposite. *See* Resp. 18. For example, *Young v. Am. Mini Theatres, Inc.*, was another "as applied" case. 427 U.S. 50, 59 (1976). Likewise, *Doe I v. Landry*, concluded that the plaintiffs there "ha[d] standing to raise a facial challenge to the statute." 909 F.3d 99, 116 (5th Cir. 2018). Plaintiffs here have standing too, *see supra* pp.3-6,

On the merits, Defendant says the law is not vague because "primarily" and "incidental" are polar opposites whose meaning is clear: "social media companies . . . connect[] users," whereas some exempted websites "provide access to news, sports, and commerce content." Resp. 18-19. This only highlights the provisions' vagueness. How a website "primarily functions" varies by user, *see* § 509.002(a)(10), just like the similarly void-for-vagueness "primary purpose" test that was at issue in *Griffin*, 2023 WL 5660155, at *13; *see Fitch*, 2024 WL 3276409, at *15 ("primarily functions" test was "overly indefinite"). "Socially interact" has the same problems. *See* Mot. 10. To solve them, Defendant suggests importing the understanding of a separate term, "social networking account," from *United States v. Comer*, 5 F.4th 535, 542 (4th Cir. 2021). Resp. 20 & n.126. Importing another court's interpretation of a separate law (with its own text) would only heighten the confusion about HB18.

### D.  HB18's monitoring-and-censorship requirements are independently unlawful.

#### 1.  The monitoring-and-censorship requirements are unconstitutional.

Defendant concedes that HB18 "require[s] providers to . . . block harmful content"—that is, to block *speech*. Resp. 28-29. HB18 replaces websites' voluntary content-moderation efforts with a demand to "block" speech that "promotes," "glorifies," or "facilitates" prohibited topics defined by content and viewpoint. § 509.053(a)-(b). These categories are content-based and view-point-based even if the State purports to regulate only the *effects* of speech. *Boos v. Barry*, 485 U.S. 312, 321 (1988). Accordingly, this provision "deputizes covered businesses into serving as censors for the State." *Bonta*, 2024 WL 3838423, at *10 (citing *Interstate Cir., Inc. v. City of Dallas*, 390 U.S. 676, 678, 684 (1968)); *id.* at *12 (citing *Playboy*, 529 U.S. at 806).

---

so this Court can likewise reach the merits of Plaintiffs' vagueness claims. *See SEIU*, 595 F.3d at 598 ("[Once] the plaintiff . . . establish[es] injury under a particular provision . . . that is validly applied to its conduct," it can "assert 'a facial challenge.'").

Defendant does not even attempt to show that this provision is constitutional under a plain-text reading. Resp. 20. *Moody* demonstrates that such an attempt would be futile. *E.g.*, 144 S. Ct. at 2407. To justify what Defendant concedes are speech restrictions, Defendant offers *ten pages* of varying "limiting construction[s]," attempting to mitigate some of the Act's most obvious restrictions on protected speech. Resp. 20-30. But Defendant cannot defend HB18 merely by disclaiming all "unconstitutional *applications* of the statute." Resp. 22 (emphasis added). And these purported constructions are permissible only when the statute's *text* is "susceptible" of such constructions. *City of Houston, Tex. v. Hill*, 482 U.S. 451, 468 (1987). Courts cannot "rewrite a . . . law to conform it to constitutional requirements." *Serafine v. Branaman*, 810 F.3d 354, 369 (5th Cir. 2016) (alteration in original; citation omitted). As explained below, Defendant's whittled-down version of HB18 still violates the First Amendment.

**a.** Defendant criticizes the purportedly "broad interpretation of § 509.053(a)" in Plaintiffs' Motion. Resp. 20. Plaintiffs' interpretation flows from HB18's plain text, which requires websites to "implement" "strateg[ies] . . . to prevent" a minor's "exposure" to (*i.e.*, "block") several content-based and viewpoint-based categories of "content." Mot. 12 (citing § 509.053(a)). Textually, that prohibition hinges on the mere "exposure" to content-based categories of speech. *See id.* But Defendant asserts that HB18 should be rewritten with a limiting construction so that it only "forbid[s]" content that "would . . . reasonably harm minors." Resp. 20-21.

To begin, Defendant offers no real justification that § 509.053(a) "is constitutional" "under a broad interpretation," *i.e.*, the plain-text reading offered by Plaintiffs. Resp. 20. Defendant argues only that the "targeted approach" Defendant proposes is constitutional. Resp 21.

Even then, Defendant's construction does not solve the constitutional deficiencies. Plaintiffs' members cannot be made to guess what kind of content "promotes, glorifies, or facilitates"

content-based categories, § 509.053(a), *and* could "harm minors" in Defendant's estimation. That is especially true considering they face civil penalties of "$10,000 *per violation*" if they guess incorrectly. § 17.47(c)(1) (emphasis added). Rather, covered websites must take the statute as written by the Texas Legislature—which requires blocking a large amount of protected speech. Thus, a song that perpetually romanticizes "I'll be watching you" falls under the Act's plain prohibitions of content "glorifying . . . stalking." *Compare* Mot. 14, *with* Resp. 20 (discussing example of The Police's *Every Breath You Take* (1983)). Defendant has no response to the other examples Plaintiffs provided. *See* Mot. 13-14.

Defendant argues that "the statute's title" creates the limitation that content is prohibited under HB18 only if it may "reasonably harm minors." Resp. 21. But "the title of [a] section carries no weight, as a heading 'does not limit or expand the meaning of a statute.'" *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 809 (Tex. 2010) (citing Tex. Gov. Code § 311.024); *see Brown v. City of Houston*, 660 S.W.3d 749, 754 (Tex. 2023) (same).

Assuming Defendant's proposed limitations on HB18 were permissible, Defendant fails to justify that reading under the First Amendment. Resp. 21. Defendant's argument appears to be that: (1) the district court in *Griffin* indicated that a bill from the United Kingdom was "more consistent" with the First Amendment than was the state law at issue there; (2) HB18 is "similar[]" to the U.K. bill; therefore (3) HB18 is constitutional. Resp. 21-22. Even taking Defendant's description of *Griffin* at face value, "more consistent with" does not equal "lawful under" the First Amendment, just as "similar" does not equal "identical." Regardless, *Griffin*'s dictum about foreign legislation is no basis to conclude that Texas's different law passes constitutional muster. America

has a First Amendment; the United Kingdom does not.[4]

**b.** Defendant next attempts to limit the meaning of "promotes, glorifies, or facilitates." § 509.053(a); *see* Resp. 22-27. Defendant concedes that the prohibition against "glorif[ying]" is "a viewpoint-based restriction" that "targets the content of the speech." Resp. 22. Defendant also concedes that "the whole series [is a] broad, viewpoint-based, restriction[]" if "'glorify' infects its neighboring verbs." Resp. 23. Perhaps as a result, Defendant does not argue that these prohibitions, so construed, could survive any level of heightened scrutiny. Rather, Defendant suggests that "glorify" should be "severed" to save the monitoring-and-censorship provision. Resp. 22. But if "glorify" *cannot* be severed, or if it *does* bear on the meaning of the other two verbs, then the monitoring-and-censorship requirements are unconstitutional. *See* Resp. 23.

HB18's use of "promotes" and "facilitates" fares no better. § 509.053(a). "'[M]ere advocacy' of illegal acts [is] a kind of speech falling within the First Amendment's core." *Counterman v. Colorado*, 600 U.S. 66, 76 (2023) (citing *Brandenburg v. Ohio*, 395 U.S. 444, 449 (1969) (per curiam)). So, if "promotes" or "facilitates" prohibits *advocacy*, then these provisions trigger strict scrutiny. *Id.* So too if either of those two verbs means anything akin to "glorifies." *See* Resp. 22-23. And, of course, Defendant never argues that these provisions (so construed) could survive strict scrutiny. They cannot. *See* Mot. 13-17.

So Defendant offers *three* definitions of "promote[]" and "facilitate[]," which could mean speech that (1) "'help[s]' bring about" an unlawful act, Resp. 23; (2) is "intended to induce or commence illegal activities"; or (3) provides "assistance to a wrongdoer with the intent to further

---

[4] In an aside, Defendant suggests that users' speech on the websites is "commercial speech." Resp. 21. Content discussing everything from politics, to religion, to users' favorite sports teams is not commercial speech. *See, e.g.*, *Moody*, 144 S. Ct. at 2393; *Bonta*, 2024 WL 3838423, at *12. And even commercial speech receives First Amendment protection. *Express Oil Change, L.L.C. v. Miss. Bd. of Licensure for Pro. Eng'rs & Surveyors*, 916 F.3d 483, 488 (5th Cir. 2019).

an offense's commission," Resp. 24 (first quoting *United States v. Williams*, 553 U.S. 285, 290 (2008); then quoting *United States v. Hansen*, 599 U.S. 762, 770-73 (2023)). In other words, Defendant rewrites HB18's monitoring-and-censorship provisions to "stretch[] no further than speech integral to unlawful conduct." Resp. 24 (quoting *Hansen*, 599 U.S. at 783); *see id.* at 27 (nine of HB18's eleven prohibited categories "directly target independently unlawful speech"). Yet each of these three standards is different, none is supported by the statute's text, and the new standards Defendant proposes (like "help bring about") are themselves unclear. Defendant's attempts to narrow HB18 would only exacerbate its vagueness.

Regardless, Defendant's rewriting would render HB18's prohibitions "largely unnecessary" because they are "superimposed upon the State's criminal regulation[s]" that already ban the same acts. *Bantam Books*, 372 U.S. at 69. Plaintiffs' motion cited the Complaint, collecting laws that ban this unlawful conduct. Mot. 16; Compl. ¶¶ 127-28. Defendant *also* concedes that other state laws already prohibit the "speech integral to unlawful conduct" these provisions would purportedly cover. Resp. 24 (citation omitted); *see id.* at 26 & n.158.

Accordingly, even as interpreted by Defendant, HB18 is impermissible "prophylaxis-upon-prophylaxis," *FEC v. Cruz*, 596 U.S. 289, 306 (2022); "suppress[ing]" the speech of "law-abiding" websites and users just "to deter conduct by a non-law-abiding third party," *Bartnicki v. Vopper*, 532 U.S. 514, 529-30 (2001). Such redundant prohibitions chill speech with virtually no corresponding benefit. *E.g.*, *Arizona Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 752 (2011). Defendant ignores all this, never addressing the cases that foreclose his argument, such as *Cruz*, *Bartnicki*, and *Bantam Books*. *See* Mot. 16.

Nor does Defendant explain how websites should become arbiters of what speech is protected versus unprotected. "'[T]he line between speech unconditionally guaranteed and speech

15

which may legitimately be regulated, suppressed, or punished is finely drawn.' Error in marking

that line exacts an extraordinary cost." *Playboy*, 529 U.S. at 817. That is why we entrust *courts* to

analyze speech on a case-by-case basis. But HB18 "delegat[es] the controversial question of what

content may" fall into its censorship categories "to the companies themselves." *Bonta*, 2024 WL

3838423, at *14. Demanding that websites make those fine-grained distinctions at scale—upon

threat of massive civil penalties—will inevitably chill dissemination of protected speech.

     **c.** Defendant's other attempts to salvage § 509.053 fail.

     First, Defendant argues that "Plaintiffs did not perform the detailed analysis *Moody* re-

quires." Resp. 26. That is incorrect. Plaintiffs "assess[ed] the state laws' scope." *Moody*, 144 S. Ct.

at 2398; *see* Mot. 4 (describing what HB18 "regulates," "does not govern," and "excludes"). De-

fendant disagrees, suggesting that *Moody*'s reference to "unconstitutional applications" requires

Plaintiffs to examine every single piece of speech to which HB18 might apply—an impossible and

unnecessary task. Resp. 26. *Moody* used "scope" as a "short[hand]" for determining the "apps,

services, functionalities, and methods for communication and connection" to which a law might

apply. 144 S. Ct. at 2398. Plaintiffs explained all of that. *See* Mot. 4. And Defendant does not

contest the scope of the law as identified by Plaintiffs—whether in the "activities" or the "actors"

HB18 "regulate[s]." *Moody*, 144 S. Ct. at 2398. Defendant has therefore forfeited any such argu-

ments.

     Defendant also argues that HB18's "constitutional applications substantially outweigh any

unconstitutional ones." Resp. 26. That balance exists only via Defendant's limiting construction

(he does not defend any other). But this construction fails for the reasons explained above at pp.12-

15.

     Second, Defendant argues the analysis is somehow different for "self-harm and eating

disorders" content and some undefined aspects of "all" other topics. Resp. 26-27. Defendant contends that HB18 is "narrowly tailored" as to this subset of speech, because otherwise the State would be "powerless to protect children." Resp. 26-27. Yet, despite citing them, Defendant ignores the many State laws that already prohibit conduct that harms minors. *See supra* p.15. The State has ample authority to protect children in ways that do not suppress speech.

Third, Defendant argues that the Act's "strategy" provisions—the technical means by which private websites must block speech—are constitutional because they do not "require providers to use *each* procedure on *each* piece of content." Resp. 29. That concession does not render § 509.053(b) constitutional, as § 509.053(b) still "regulat[es] [] content-moderation policies." *Moody*, 144 S. Ct. at 2408. That is true regardless of the practical problems the State's regulation will create, or whether some services may already comply in some respects. *Contra* Resp. 29-30.

**d.** Section § 509.053 is an unconstitutional prior restraint. *Before* a website publishes any speech, websites must "implement" a strategy to "block harmful content." Resp. 29. This necessarily entails pre-screening and monitoring all speech on the website. Defendant argues that HB18 does not operate via "administrative and judicial orders that forbid speech in advance of the time that speech would occur." Resp. 34. But courts "look through forms" of regulation "to the substance," as even "informal censorship may" chill speech. *Bantam Books*, 372 U.S. at 67. HB18 conscripts websites to be pre-screening "administrative" or "judicial" tribunals. This conscription was missing in *Gibson v. Tex. Dep't*, 700 F.3d 227, 235 (5th Cir. 2012). But conscription was present in *Bantam Books*, on which the Supreme Court relied for the proposition "that a government official cannot do indirectly what she is barred from doing directly." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 190 (2024). The First Amendment prevents the State from creating its own pre-publication tribunal, so it prevents the State from conscripting websites to do the same. *Id.*

17

**e.** HB18's monitoring-and-censorship provisions are also unconstitutionally vague. Defendant argues that § 509.053(a) is similar to some of Plaintiffs' members' policies. Resp. 27. Similarity is not the point: The State cannot codify private editorial standards into law. *E.g.*, *Moody*, 144 S. Ct. at 2408. Nor do any alleged similarities render HB18 less vague. Companies decide how to apply *their own* policies, and there are *still* judgment calls. *See* Mot. 18. They do not know what *Texas* thinks similar language means. This case shows the dissonance. Defendant argues that many of HB18's prohibitions reach only "speech integral to unlawful conduct." Resp. 24 (citation omitted). But Plaintiffs' members' policies prohibit more than unprotected speech. Szabo Decl. ¶¶ 11-17; Schruers Decl. ¶¶ 8-10; Pai Decl. ¶¶ 10-17; Veitch Decl. ¶¶ 15-21. In fact, through Texas House Bill 20 (2021), Texas has purported to require social media websites to disseminate that objectionable (yet nevertheless protected) speech. *See Moody*, 144 S. Ct. at 2405.

As for the word "promote," Defendant concedes that "*Baggett v. Bullitt* found this term vague." Resp. 27. Defendant says that case "applied to an incalculable number of topics." Resp. 28. But it is far from evident that speech "touching on 'institutions of the United States'" (Resp. 28) comprises a less calculable set than, say, "content that promotes . . . substance abuse." § 509.053(a)(2). Reducing "promotes" so that it refers only (or mostly) to unprotected speech dissipates some vagueness, but it imports other problems as explained above (at pp.14-16). Ditto for "facilitates." And having conceded that "glorifies" is unconstitutional and reading it out of the law, Defendant does not even attempt to define that term. Section 509.053(a) is thus hopelessly vague.

**2. The monitoring-and-censorship requirements are preempted by 47 U.S.C. § 230.**

Section 230 preempts HB18's monitoring-and-censorship requirements. Defendant admits they mandate covered websites to "adopt [] required content-moderation 'strategies.'" Resp. 32. States cannot, consistent with § 230, penalize websites for their alleged "failure[s] to implement

basic safety measures" or "decisions relating to the monitoring" or "screening" "of content"—*i.e.*, content moderation. *Doe v. MySpace, Inc.*, 528 F.3d 413, 419-20 (5th Cir. 2008) (citation omitted).

Defendant's argument relies on an attempt to distinguish liability for failure to moderate harmful third-party content from liability for the content itself—which is contrary to text, precedent, and common sense. Otherwise, Defendant does not contest that covered websites are "interactive computer service[s]" that disseminate "information provided by" third parties. 47 U.S.C. § 230(c)(1). Nor does Defendant respond to most of Plaintiffs' arguments. *See* Mot.18-19.

Defendant's defamation example illustrates the problem. Resp. 32. Under his interpretation of § 230, States could penalize websites for alleged failures to "adopt . . . content-moderation 'strategies,'" Resp. 32, addressing *defamatory* content. Yet, Defendant recognizes that Congress intended § 230 to protect websites from defamation liability for third-party content. Resp. 32. Defendant contends that § 230(c)(1) protects websites for claims based on defamatory third-party speech because "the unlawfulness is stemming from the *content of a third party's* message." Resp. 32. But the *website's* role is only to *display* the content.[5] In other words, what Defendant contends are paradigmatic cases for § 230 protection are cases where websites disseminate and *fail to moderate content*. Thus, HB18's attempt to regulate content moderation is preempted by § 230.

Defendant misses the point in then arguing "HB 18 does not make providers liable for damages minors suffer due to viewing harmful material." Resp. 32. But "what matters is whether the cause of action inherently requires the court to treat the [website] as the 'publisher or speaker' of" third-party content. *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101-02 (9th Cir. 2009). And "publication involves . . . deciding whether to publish or to withdraw from publication third-party

---

[5] *See* Restatement (Second) of Torts § 558(b) (1977) ("To create liability for defamation there must be: . . . an unprivileged publication to a third party.").

content." *Id.* at 1102. Here, HB18's requirements are designed to prevent minors from "viewing harmful material." Resp. 32. The Fifth Circuit has held, however, that § 230 preempts attempts to require websites to "address certain harmful content" on their services. *MySpace*, 528 F.3d at 420 (citation omitted).

Defendant also misreads *Free Speech Coalition, Inc. v. Paxton*, 95 F.4th 263 (5th Cir. 2024), *cert. granted* (U.S. July 2, 2024). There, complying with state law meant implementing "age verification" on pornographic websites—*not* monitoring or removing content. *Id.* at 285. Defendant's own defense of the law in that case rested on precisely that argument. *See* Mot. 18 (quoting Defendant). Here, HB18 requires monitoring and blocking content. That falls in the heartland of § 230's protections, as websites "cannot be held liable for harmful communications that they fail to remove." *Free Speech*, 95 F.4th at 285. Inescapably, that is what HB18 would do. Similarly, *Lemmon v. Snap, Inc.*, is inapplicable because the allegations in that case considered a "filter" that the court concluded "ha[d] nothing to do with . . . *monitoring*[] or removing of the content that its users generate through Snapchat." 995 F.3d 1085, 1092 (9th Cir. 2021) (emphasis added).

## II.    The remaining factors favor a preliminary injunction.

Defendant does not contest the other preliminary injunction factors. Resp. 35. The loss of First Amendment freedoms always "constitutes irreparable injury," *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020), and "injunctions protecting [those] freedoms are always in the public interest," *Book People*, 91 F.4th at 341. Nor did Plaintiffs engage in any "lengthy delay." *Contra* Resp. 35. Plaintiffs filed this suit less than a month after the Supreme Court decided *Moody*. That decision—rejecting Texas's attempt to *compel* dissemination of some of the very same content it now seeks to *ban*—has been highly relevant here.

## Conclusion

Plaintiffs respectfully request that this Court enjoin Defendant from enforcing HB18.

Dated: August 23, 2024

Respectfully submitted,

/s/ Scott A. Keller

Steven P. Lehotsky*
steve@lkcfirm.com
Jeremy Evan Maltz (Texas Bar # 24102129)
jeremy@lkcfirm.com
LEHOTSKY KELLER COHN LLP
200 Massachusetts Ave., NW, Suite 700
Washington, DC 20001

Scott A. Keller (Texas Bar # 24062822)
scott@lkcfirm.com
Joshua P. Morrow (Texas Bar # 24106345)
josh@lkcfirm.com
LEHOTSKY KELLER COHN LLP
408 W. 11th Street, 5th Floor
Austin, TX 78701
T: (512) 693-8350
F: (512) 727-4755

Jared B. Magnuson*
jared@lkcfirm.com
LEHOTSKY KELLER COHN LLP
3280 Peachtree Road NE
Atlanta, GA 30305

*Admitted *pro hac vice*

### Certificate of Service

I certify that on August 23, 2024, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will send notification to all counsel of record.

/s/ Jeremy Evan Maltz
Jeremy Evan Maltz